# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| JOSEPH BANNISTER, | ) |
| | ) |
| Petitioner, | ) Case No. 16-cv-2713 |
| | ) |
| v. | ) Judge Sharon Johnson Coleman |
| | ) |
| KIM BUTLER, | ) |
| | ) |
| Respondent. | ) |

**MEMORANDUM OPINION AND ORDER**

Petitioner, Joseph Bannister, petitions this Court for a writ of habeas corpus based on alleged deprivations of his constitutional rights at multiple points during the course of his trial and subsequent death-sentencing hearing. For the reasons set forth herein, Bannister's petition for a writ of habeas corpus [1] is denied.

**Background**

Because Bannister does not present clear and convincing evidence challenging the facts set forth in the Illinois Supreme Court's opinion, those facts are presumed to be correct for the purpose of habeas review and are adopted as set forth below. *See* 28 U.S.C. § 2254(e)(1); *Rever v. Acevedo*, 590 F.3d 533, 537 (7th Cir. 2010).

Bannister was charged in a multicount indictment with, as is relevant here, the first degree murder of Henrietta Banks, the attempted murder of Sharon Banks, and home invasion. Bannister waived a jury for the guilt-innocence phase of the proceedings, and the court accordingly conducted a bench trial. The evidence at trial showed as follows.

Bannister and Sharon Banks had previously lived together and shared a daughter. Sharon Banks, Bannister's daughter, and Sharon's other children shared an apartment with Sharon's sister Henrietta, Sharon and Henrietta's mother, and Henrietta's children.

About a month before the events in question, Sharon had obtained an emergency order of protection against Bannister after he crashed his car into hers and threatened to kill her. In the intervening months Bannister had further threatened Sharon with bodily harm.

At about noon on the day in question Bannister, dressed in black and armed with a handgun, broke into Sharon's apartment through a side door. He first encountered Sharon, who he shot in the shoulder. He then approached Henrietta, who was sitting on a couch, and shot her three times, killing her. Bannister then returned to Sharon, who he shot again in the chest. He then turned his gun on Sharon's mother, but stopped and fled when his daughter intervened.

Bannister was arrested by the Chicago Police Department five months later. Following his arrest, Bannister gave a statement admitting to shooting Sharon, but claiming that he let himself into the apartment with a key and that Henrietta was unharmed when he left the apartment.

Prior to trial, Bannister repeatedly asserted to his attorney that Sharon had visited him in jail and had told him that she would testify that he had not committed the crimes that he was charged with. These claims were not supported by the jail's visitation logs, but Bannister persisted in his belief that Sharon would exonerate him at trial and accordingly refused to discuss other legal strategies with counsel. Based on Banister's unsubstantiated insistence that Sharon was visiting him and would assist in his defense, defense counsel retained a clinical psychologist and forensic psychiatrist to assess whether Bannister was fit to stand trial. After examining Bannister, both doctors agreed that he suffered from a delusional order, and the forensic psychologist opined that Bannister was unfit to stand trial. When this information was presented to the court, the court ordered that a court psychologist and forensic psychiatrist evaluate Bannister's fitness to stand trial.

2

The court psychologist and forensic psychiatrist both found that Bannister was fit to stand trial and suggested that he was malingering.

At the subsequent competency hearing, the state offered the testimony of the court's forensic psychiatrist, and the defense in turn offered the testimony of its own forensic psychiatrist. On cross-examination, the defense psychiatrist admitted that Bannister understood the nature of the charges, the role of courtroom personnel, and the nature of a jury trial, and clarified that Bannister's delusion was confined to his relationship with Sharon. After the hearing, the court found Bannister fit to stand trial and the case proceeded to a bench trial.

At trial, Bannister did not testify or present any evidence in his own defense. At the close of trial, the court found Bannister guilty of Henrietta's murder, of the attempted murder of Sharon, and of home invasion. Following admonishments from the trial court and against counsel's advice, Bannister demanded that the death sentencing hearing be conducted before a jury. Bannister's lawyer filed a motion asking the court to hold a bench sentencing hearing notwithstanding Bannister's insistence on a jury, which the court denied. After receiving the evidence, the jury found beyond a reasonable doubt that Bannister was eligible for the death penalty and proceeded to the second stage of the death sentencing hearing. Sharon and a former gang member who Bannister had previously shot testified in aggravation. At the mitigation hearing Bannister's trial counsel presented testimony from Bannister's half-sister and half-brother about Bannister's good character and difficult upbringing. At the close of the hearing, the jury found that death was the appropriate sentence. The court therefore sentenced Bannister to death, with concurrent 45-year and 30-year prison terms on the attempted murder conviction and home invasion conviction, respectively. Bannister's death sentence was subsequently commuted to life in prison.

Following his trial, Bannister appealed his conviction to the Illinois Supreme Court, which affirmed. *People v. Bannister*, 902 N.E.2d 571, 232 Ill.2d 52 (2008). He then filed a petition for a writ

of certioriari, which was denied. *Bannister v. Illinois*, 558 U.S. 831, 130 S.Ct. 63, 175 L.Ed.2d 47 (2009). Bannister next filed a post-conviction petition, which the trial court dismissed. That decision was affirmed on appeal, and the supreme court declined to issue a petition for leave to appeal. Bannister subsequently filed the present petition before this Court.

**Legal Standard**

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides for relief when, as a result of a state court decision, a criminal defendant is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The statute exists to ensure the fundamental fairness of states' criminal adjudications. *Williams v. Taylor*, 529 U.S. 362, 375, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Before a district court can address a habeas petition on its merits, a petitioner must have both exhausted his state remedies and avoided any fatal procedural defaults. *See* 28 U.S.C. § 2254(b). In Illinois, exhaustion requires that the petitioner present each claim in his habeas petition to the court of direct appeal and, if possible, to the Illinois Supreme Court in a petition for discretionary review. *Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 844–845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999)).

In order to obtain relief under section 2254, it is not enough to demonstrate that a state court's decision was erroneous. *Badelle v. Correll*, 452 F.3d 648, 655 (7th Cir. 2006). Rather, a writ may only be granted if the state court, in adjudicating the claim on the merits, unreasonably applied clearly established federal law as determined by the Supreme Court of the United States or reached a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. § 2254(d). When reviewing a state court's decision for an unreasonable application of established federal law, this Court is limited to the record that was before that court when it adjudicated the claim. *Cullen v. Pinholster*, 563 U.S. 170, 183, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011). In order to prevail in a challenge to the state court's factual findings, the

petitioner must offer clear and convincing evidence that the state court's factual determination was wrong. Accordingly, to obtain a writ of habeas corpus, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement. *Harrington v. Richter*, 562 U.S. 86, 101, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011).

**Discussion**

*Constitutionally Ineffective Assistance of Counsel at the Competency Hearing*

Bannister first contends that his trial counsel was constitutionally ineffective in failing to obtain and present certain evidence showing that Bannister was unfit to stand trial. In order to succeed on an ineffective assistance of counsel claim, a petitioner must ordinarily prove both that (1) his counsel's performance fell below "an objective standard of reasonableness" and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different". *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In reviewing counsel's performance, courts are "highly deferential" and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id* at 689. The question is not whether counsel's conduct deviated from best practices or common custom, but rather whether it constituted incompetence under the prevailing professional norms in light of the facts of the particular case, as viewed at the time of counsel's conduct. *Id.* at 690, *Harrington v. Richter*, 562 U.S. 86, 105, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011). When reviewing a state court's determination under *Strickland* in a habeas proceeding, the question before this Court is thus not whether counsel's actions were reasonable, but rather whether there is any reasonable argument that counsel's actions were objectively reasonable. *Harrington*, 562 U.S. at 105. Thus, in reviewing a state court judgment rejecting an ineffective assistance of counsel claim,

this court employs a "doubly deferential" standard of review giving both the state court and the defense attorney the benefit of the doubt. *Burt v. Titlow*, 134 S.Ct. 10, 31, 187 L.E.2d 348 (2013).

Based on the suspicion that Bannister might not be competent, trial counsel secured two experts, both of whom evaluated Bannister and diagnosed him with a delusional disorder. The defense experts, however, found no evidence of organic defects or hallucinations, and Bannister denied having suffered from hallucinations, severe head injuries, or loss of consciousness in the past. At the competency hearing, moreover, the defense expert conceded that Bannister could understand the nature of the proceedings against him and that his delusion was confined to his relationship with Sharon.

During Bannister's post-conviction proceedings, postconviction counsel discovered that Bannister had been in a 1998 car accident and that a CT scan of his head following the accident showed that he had suffered from a lacunar infarct (a type of stroke) in the right caudate nucleus, an area of the brain linked to content-specific delusions. Bannister therefore claimed that his trial counsel was constitutionally ineffective in failing to gather readily available medical records of organic brain damage and Bannister's educational, employment, and juvenile records, as well as in failing to interview more of Bannister's siblings (in order to locate Bannister's medical records).

The Illinois Appellate Court, in reviewing that claim, held that trial counsel's conduct was not unreasonable. The court explained that both experts who had examined Bannister had testified that he suffered from a delusional disorder (as opposed to an organic brain disorder like a lacunar infarct), and that there was nothing in their reports to suggest that further testing would be beneficial. This was especially so, the Court found, because Bannister had denied having any mental problems, hallucinations, or past severe head injuries, factors which might have suggested an organic brain disorder. In light of the information available to trial counsel, the appellate court concluded

that it was not unreasonable for trial counsel to elect to present the forensic psychiatrist's testimony rather than further investigating the possibility of organic brain disorders.

It is well established that an attorney's failure to investigate a defendant's mental condition, where there is evidence of psychiatric problems, may constitute constitutionally deficient performance. *Brown v. Sternes*, 304 F.3d 677, 694 (7th Cir. 2002) (citing *Brewer v. Aiken*, 935 F.2d 850, 857–58 (7th Cir. 1991)) ("We have held in the past that *where a defense attorney has received information from a reliable source that his client has had a history of psychiatric problems, but failed to adequately investigate this history, counsel failed to provide effective assistance.*") (emphasis in original); *see also Ryder ex rel. Ryder v. Warrior*, 810 F.3d 724, 733 (10th Cir. 2016) (recognizing that an attorney's complete failure to investigate a defendant's mental health could demonstrate constitutionally deficient performance). Here, however, the record shows that counsel did conduct an investigation by retaining two medical experts to examine Bannister. Moreover, as the state court noted, the investigation that Bannister now contends should have been conducted was not supported by Bannister's own statements regarding his medical history or the testimony of the medical experts. This Court cannot say, looking at all of the facts before it, that it was entirely unreasonable for counsel to stop investigating Bannister's medical history after two qualified experts opined that Bannister suffered from a delusional disorder and was not competent. There is therefore a reasonable argument to be made that counsel's actions in investigating Bannister's mental health were objectively reasonable. *Harrington*, 562 U.S. at 105.

*Constitutionally Ineffective Assistance of Counsel at the Death Sentencing Hearing*

Bannister next contends that trial counsel was constitutionally ineffective for failing to investigate and present mitigating evidence of organic brain damage, Bannister's educational, employment, and juvenile incarceration records, and interviews with Bannister's family members at Bannister's death penalty sentencing hearing. Bannister first raised this argument in his post-

7

conviction petition and, after the postconviction court denied that petition, in his post-conviction appeal.

The Illinois Appellate Court, although it considered those same arguments with respect to the fitness hearing, declined to consider Bannister's claims with respect to his sentencing on the grounds that they were moot. That Court explained:

> An issue on appeal is moot when it is abstract or presents no controversy. *People v. Blaylock*, 202 Ill.2d 319, 325 (2002). An issue can become moot if circumstances change during the pendency of an appeal that prevents the reviewing court from being able to render effectual relief. *People v. Jackson*, 199 Ill.2d 286 (2002). In this case, subsequent to the filing of the defendant's postconviction petition, the Governor commuted the defendant's death sentence to natural life imprisonment without the possibility of parole or mandatory supervised release. "Commutation removes the judicially imposed sentence and replaces it with a lesser, executively imposed sentence." *People v. Miller*, 203 Ill.2d 433, 438 (2002). Thus, the commutation rendered this sentencing issue moot. *People ex rel. Madigan v. Snyder*, 208 Ill.2d 457, 480 (2004); see also *People v. Oaks*, 2012 IL App (3d) 110381, ¶ 27 (any claims of ineffective assistance involving evidence of the defendant's abusive childhood or the defendant's sentencing issues were rendered moot upon commutation of his death sentence).

*People v. Bannister*, 2015 IL App (1st) 140175-U, at ¶ 42, 2015 WL 5095311 (2015).

Because habeas review exists to correct errors of a constitutional dimension, a federal court cannot review a claim that was decided in state court based on an independent and adequate state law ground. *Szabo v. Walls,* 313 F.3d 392, 395-96 (7th Cir. 2002).

> This rule applies whether the state law ground is substantive or procedural. In the context of direct review of a state court judgment, the independent and adequate state ground doctrine is jurisdictional. Because this Court has no power to review a state law determination that is sufficient to support the judgment, resolution of any independent federal ground for the decision could not affect the judgment and would therefore be advisory.

*Coleman v. Thompson*, 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (citations omitted), *superseded by statute on other grounds*, 28 U.S.C. § 2254(b)(2). A state law ground is independent of the federal issue when it provides an independent basis for the disposition of the case such that the

court does not actually address the merits of the federal question. *Kaczmarek v. Rednour,* 627 F.3d 586, 592 (7th Cir. 2010). A state law ground is adequate when it has been proclaimed prior to the court's ruling and regularly followed by the state's courts. *Id.* at 592.

Here, the Illinois Appellate Court declined to consider the merits of Bannister's constitutional arguments and instead rejected his claim as moot, based on the commutation of his sentence. The appellate court's determination that Bannister's claim was moot constituted an independent basis for its disposition of the claim. That holding, moreover, was adequately supported by previously existing caselaw. *See People v. Oaks*, 978 N.E.2d 1151, 1157, 2012 IL App (3d) 110381 ("[A]ny claims of ineffective assistance involving evidence of defendant's abusive childhood or defendant's sentencing issues were rendered moot upon commutation of his death sentence."). Bannister's claim is thus procedurally defaulted.[1]

There are limited exceptions which permit a petitioner to avoid a procedural default. *Lee v. Kemna,* 534 U.S. 362, 363, 122 S.Ct. 877, 151 L.Ed.2d 820 (2002). A procedural default may be avoided when a petitioner demonstrates (1) cause for the default and actual prejudice resulting from the alleged violation of federal law or (2) that the denial of relief will result in a fundamental miscarriage of justice. *Wainwright v. Sykes,* 433 U.S. 72, 86-87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Murray v. Carrier,* 477 U.S. 478, 495-96, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). Bannister, however, makes no effort to establish either exception, and there is nothing in the record to suggest that either exception otherwise applies.

Accordingly, this Court cannot consider Bannister's second claim.

*Knowing and Voluntary Waiver of the Right to a Jury Trial*

Bannister next contends that his Sixth Amendment right to trial by jury was denied where he did not knowingly and voluntarily waive his right to trial by jury at the guilt/innocence phase of the

---

[1] The state, in its Answer, overlooks Bannister's procedural default without explanation and instead asks this Court to deny Banister's claim on its merits. Because this Court cannot ignore a procedural default, it declines to do so.

proceedings. Specifically, Bannister asserts that the trial court misstated the minimum and maximum penalties that Bannister was facing during the court's colloquy.

On direct appeal, the supreme court found that Bannister had not objected to the allegedly erroneous admonitions at trial or in his post-trial motion. *Bannister*, 902 N.E.2d at 580. Accordingly, the supreme court held that his claim that he had unknowingly waived his right to a jury trial was procedurally forfeited and did not proceed to consider the merits of that contention. *Id.*

Under Illinois law, a claim is forfeited when a defendant fails to object to the error at trial or file a motion for a new trial based on the error. *People v. McLaurin,* 922 N.E.2d 344, 349, 235 Ill.2d 478 (2009) (citing *People v. Enoch,* N.E.2d 1124, 1129, 122 Ill.2d 176 (1988)). Forfeiture is an independent and adequate state law ground of decision that constitutes a procedural default and bars federal habeas review. *Smith v. McKee,* 598 F.3d 374, 386 (7th Cir. 2010). Because Bannister, as previously discussed, has made no allegations sufficient to avoid a procedural default, Bannister's claim concerning his waiver of a jury at the guilt/innocence stage is procedurally defaulted and cannot be considered by this Court.

*Constitutional Violations at the Penalty Phase*

Bannister next contends that the trial court violated his Sixth Amendment and Fourteenth amendment rights during the penalty phase of trial. Specifically, Bannister asserts that the trial court (1) erred in denying defense counsel's request for a bench death sentencing hearing, (2) failed to instruct the jury that Bannister was subject to a prison term so long that it was effectively a "de facto natural life sentence," and (3) gave improper jury instructions indicating that the jury must unanimously find that death was not appropriate or else it had to impose the death penalty.

Bannister first argues that the trial court unconstitutionally denied defense counsel's request for a bench death sentencing hearing. Prior to trial, Bannister executed a written jury waiver for the death sentencing hearing. Bannister subsequently decided, however, to postpone that decision until

after the conclusion of the guilt-innocence phase of the trial. Following the guilt-innocence phase, and after the court had explained the death sentencing hearing, Bannister verbally requested a jury for sentencing. Following a brief recess, counsel informed the Court that Bannister was no longer waiving a jury for his death sentencing hearing. At the next court date a week later, Bannister again stated that he wanted a jury for sentencing. The next day, prior to jury selection, defense counsel filed a written motion asking the trial court to grant a bench hearing for the sentencing notwithstanding Bannister's desire for a jury, arguing that "the decision for either a bench or jury at this juncture is trial strategy and lies with defendant's attorney." The trial court denied that motion and proceeded with a jury death sentencing hearing as Bannister had requested.

Bannister now appears to contend that the trial court, by heeding Bannister's request for a jury at his death sentencing hearing over his counsel's request for a bench hearing, somehow violated his constitutional rights. Based on Bannister's arguments on direct appeal, it appears that the basis for this argument is the notion that, because the right to a jury at a death sentencing hearing is a statutory right, it is not a "personal decision" left to the defendant but instead is a matter of trial strategy for defense counsel to decide.

But Bannister offers, and this Court is aware of, no legal authority holding that a trial court's deference to a criminal defendant's demand to have a jury at a death sentencing hearing somehow violates the defendant's constitutional rights. To the contrary, this would appear to be precisely the sort of decision that is of "such moment" that it cannot be made by a surrogate. *See Hurst v. Florida*, 136 S.Ct. 616, 622–624, 193 L.Ed.2d 504 (2016) (holding that the right to a jury extends to all fact-finding at the death sentencing stage). Accordingly, this Court cannot say that the trial court unreasonably applied well-established federal law when it accommodated Bannister's request for a jury death sentencing hearing.

Bannister also argues that the trial court violated his constitutional rights by failing to inform the jury that he was subject to a prison term so long that it was effectively a "de facto natural life" sentence. This issue arose from the trial court's comments during voir dire and through written jury instructions informing the jury that if the jury found that death was not appropriate, the court would impose a sentence other than death. Bannister contends that it was error not to specify that the sentence other than death entailed a mandatory minimum of 107 years in prison, and therefore constituted de facto natural life imprisonment.

Bannister raised this argument to the supreme court on direct appeal. Bannister, however, failed to object to the trial court's comments during voir dire, failed to offer an alternative jury instruction, and failed to raise these objections in his post-trial motion. The supreme court accordingly held that these claims were forfeited. As previously discussed, when a claim is denied under Illinois' forfeiture doctrine that claim is procedurally defaulted, and cannot be considered absent one of the narrow exceptions to procedural default. Because Bannister does not establish the applicability of either exception here, his claim cannot be considered.

Finally, Bannister asserts that the court gave confusing and misleading jury instructions during his death sentencing hearing by giving a modified version of IPI Criminal 4th No. 7C.06 which contained a confusing double-negative. Jury instruction six correctly stated that:

> Under the law, the defendant shall be sentenced to death if you determine unanimously, after weighing the factors in aggravation and mitigation, that death is the appropriate sentence.
>
> If, after weighing the factors in aggravation and mitigation, you are unable to determine unanimously that death is the appropriate sentence, the court will impose a sentence other than death.

Jury instruction seven, which set forth the aggravating and mitigating factors to be considered and which Bannister is now challenging, concluded by stating:

> If you unanimously find from your consideration of all the evidence and after weighing the factors in aggravation and mitigation that death is the appropriate sentence, then you should sign the verdict requiring the court to sentence the defendant to death.
>
> If you do not unanimously find from your consideration of all the evidence and after weighing the factors in aggravation and mitigation that death is not the appropriate sentence, then you should sign the verdict requiring the court to impose a sentence other than death.

902 N.E.2d at 591. The trial court also provided two modified verdict forms, reading "[w]e the jury unanimously find that death is the appropriate sentence" and "[a]fter weighing the factors in aggravation and mitigation, one juror or more has determined that death is not the appropriate sentence." *Id.* at 592.

A jury instruction that is incorrect under state law, however, is not a basis for habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Thus, this Court cannot consider whether the instruction issued is deficient in light of the model instruction or whether it could have been better worded. *Id.* Instead, the only question that this Court may consider is whether the instruction, by itself, so infected the entire trial that the resulting conviction violates due process. *Id.* (quoting *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973)). Ambiguity in capital-sentencing instructions gives rise to constitutional error only where there is a reasonable likelihood that the jury has applied the challenged instruction in an unconstitutional manner; the mere possibility of confusion is not enough. *Kansas v. Carr*, 136 S.Ct. 633, 643, 193 L.Ed.2d 535 (2016). In assessing ambiguous jury instructions, this Court must judge the instruction's impact in the context of the jury instructions as a whole and the trial record and must consider whether there is a reasonable likelihood that the jury has applied the challenged instruction in a manner that violates the constitution. *Estelle*, 502 U.S. at 72.

This Court agrees with Bannister that the challenged jury instruction is confusing and, if read alone and interpreted against Bannister's interests, could be taken as stating that the jury must be

13

unanimous in its determination against the death penalty. This interpretation, however, is contradicted by instruction six, which explained that if the jury could not unanimously determine that death was the appropriate sentence the court would impose a sentence other than death. It is also undermined by the verdict forms, which expressly stated that if "one juror or more has determined that death is not the appropriate sentence" "[t]he court shall not sentence the defendant Joseph Bannister to death." There is thus little chance that the erroneous language, which was facially at odds both with language in an adjacent instruction and in the verdict form, caused the jury to misapply the law. Thus, the double negative at issue does not constitute a constitutional error.

*Violations of Bannister's Right to Remain Silent*

Bannister contends that his Sixth and Fourteenth Amendment rights were denied at the penalty phase when the prosecutor argued that Bannister had showed no remorse, thereby violating Bannister's constitutional right to remain silent.

At the second stage of the death sentencing hearing, Bannister presented the testimony of his half-sister, Anita Henry, as mitigation evidence. The following exchange occurred during her cross-examination:

> [Prosecutor]: Miss Henry, has the defendant ever told you that he is sorry for what happened on September 23 of 2000?
>
> [Defense Counsel]: Objection, Judge.
>
> THE COURT: I will sustain the objection.
>
> [Prosecutor]: Has he ever shown you any remorse?
>
> [Defense Counsel]: Objection
>
> THE COURT: Objection sustained.
>
> [Prosecutor]: Nothing else, Judge.
>
> [Defense Counsel] I have nothing further. Thank you, Miss Henry.
>
> THE COURT: Thank you. (Witness excused).

*Bannister*, 902 N.E.2d at 594.

During closing arguments, the prosecutor argued as follows:

> Look at his time when he's in custody. What does being in custody mean to Joseph Bannister because we got to look at it because that's one of the things you are going to consider. The death sentence is appropriate in light of all the aggravation you have before you, but if he doesn't get a death sentence, he's going to be in custody, so you might as well look at what life is going to be for Joseph Bannister[,] In custody, it's not too bad. He gets to talk to people, he gets mail, he gets to watch TV, and he gets to use gang paraphernalia, he gets to be respected by guards. He gets to beat up other prisoners and/or guards. He gets to hang with his fellow GD's, that's Joseph Bannister's life in prison, and he's not there contemplating the horror of what he did. He's not sitting there, "Say, you know what, I've done some wrong in my life," have you heard that from Joseph Bannister?
>
> [Defense Counsel]: Objection
>
> THE COURT: Sustained.
>
> [Prosecutor]: 'I'm sorry,' have you heard any remorse from Joseph Bannister?
>
> [Defense Counsel]: Objection.
>
> THE COURT: I will sustain the objection. Ask the jury to disregard.
>
> The prosecutor further remarked:
>
> When we were questioning you during jury selection, we told you that you would hear some bad things about Joseph Bannister and some good things about Joseph Bannister. I want—and you would hear some statutory factors . . . . Each of us gets to present any non-statutory factors we wish, and I'm going to tell you and you're going to even think of some more because there's a lot out there, you've listened to this evidence for a bit, some of the non-statutory aggravating factors that you can hold against Joseph Bannister when you make your determination that he is more deserving of the death sentence. . . . Henrietta Banks was defenseless. She's defenseless, and he shoots her in the head at close range. Sharon was defenseless for that matter, and he shot her, put that down as another aggravating factor.
>
> * * *

15

> Ladies and gentlemen, [in] this country we only survive by obeying the laws. Put it down in bold letters in aggravation that he killed people that had been in court willing to testify against him earlier, that there had been an order of protection, a whole set of laws had been developed, to protect people when people are in their violent cycles or violent period, and he disobeyed it. . . . Put that down in aggravation . . . . [P]ut down that he killed a woman that he knew had two small children. . . . Put down the other children were present. . . . you heard them. He couldn't have missed them being there, and they're screaming, and he killed Henrietta in front of small children, and them paying a price for that forever, and put that down in aggravation.
>
> And while you're at it, put down his flight, that from September 23, 2000 to February 11 of 2001, he's at large. . . . Can you imagine the horror and the fear that Sharon Banks felt every time she looked over her shoulder knowing that Joseph Bannister was out there? . . . Put that down in aggravation; caught with his false I.D., there's another one. And while you are at it, put down all the abuse he gave to Sharon all those years, off and on through those years, put that down. Disobeying the Court orders, the judge's order, bond, counseling, domestic violence, having a handgun . . . have that down. . . . Joseph Bannister doesn't care about us, he doesn't care about the court system, put that in aggravation, and no remorse, put that down.
>
> [Defense Counsel]: Objection
>
> THE COURT: I'll sustain the objection.

*Id.*

It is beyond well established that a criminal defendant has a right not to testify as a witness on his or her own behalf, and that the prosecutor may not directly or indirectly comment on the defendant's exercise of that right. *Griffin v. California*, 380 U.S. 609, 615, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). Under Illinois law, however, a prosecutor may fairly comment on the defendant's lack of remorse. *Bannister*, 902 N.E.2d at 595. And the Supreme Court has expressly reserved ruling on the question of whether or not a defendant's silence bears upon the determination of a lack of remorse. *Mitchell v. United States*, 526 U.S. 314, 330, 119 S.Ct. 1307, 143 L.Ed.2d 424 (1999). Because the Supreme Court has declined to rule on this issue, there is no Supreme Court precedent

to be contradicted or misapplied and the prosecutor's remarks therefore cannot give rise to habeas relief.[2] *Virsnieks v. Smith*, 521 F.3d 707, 716 (7th Cir. 2008).

*Due Process Violations Arising from the Admission of Prejudicial Evidence*

Bannister further contends that the trial court erroneously admitted irrelevant, highly prejudicial gang evidence at his death eligibility hearing, thereby depriving him of his Due Process rights. Bannister asserts that he raised this argument in his post-conviction motion, and that he subsequently raised it in his post-conviction appeal to the Illinois Appellate Court and the Petition for Leave to Appeal to the Illinois Supreme Court. To the contrary, however, this Court's review of Bannister's post-conviction appeal and petition for leave to appeal reveal that he did not raise this argument in either the appellate court or the supreme court.

As previously noted, a petitioner must have exhausted his state remedies before his claim may be considered on habeas review. 28 U.S.C. § 2254(b). Exhaustion occurs only when a claim has been subject to one complete round of the state's appellate review process, including any petitions for discretionary review that are part of the ordinary appellate procedure. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Because Bannister did not appeal the district court's denial of this claim to the appellate court or the supreme court, he has not exhausted his state court remedies. Accordingly, this Court cannot consider his claim on appeal.

*The Constitutionality of the Illinois Death Penalty Statute*

Finally, Bannister contends that the Illinois Supreme Court misapplied federal law when it rejected his claim that the Illinois Death Penalty Statute violates the principles of *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and *Ring v. Arizona*, 536 U.S. 584, 122

---

[2] Although this Court does not perceive a violation of clearly established federal law, it nevertheless acknowledges the prosecutor's misconduct here. The trial court, through its rulings, had made clear that the topic of Bannister's remorse was off limits. The prosecution flagrantly disregarded these rulings in a thinly veiled attempt to place a consideration that the court had placed "off-limits" in front of the jury. This conduct does not rise to the level of warranting habeas corpus relief, but it nevertheless warrants condemnation as improper and unprofessional behavior.

S.Ct. 2428, 153 L.Ed.2d 556 (2002) because it does not require the state, at the second stage of the death sentencing hearing, to prove that the aggravating factors outweigh the mitigating factors beyond a reasonable doubt. In order to prevail on this claim, Bannister must demonstrate that the Illinois Supreme Court unreasonably applied clearly established federal law as determined by the Supreme Court of the United States.

The Supreme Court, however, has never held that the constitution requires a specific method for balancing the mitigating factors and aggravating factors in a capital sentencing. *Kansas v. Marsh*, 548 U.S. 163, 175, 126 S.Ct. 2516, 165 L.Ed.2d 429 (2006) (quoting *Franklin v. Lynaugh*, 487 U.S. 164, 179, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988)). The Court, moreover, has repeatedly approved of death penalty statutes employing lesser standards than that proposed by Bannister. *See, e.g., Marsh*, 548 U.S. at 181 (holding a capital sentencing scheme directing imposition of the death penalty where the jury finds that the aggravating and mitigating circumstances are in equipoise to be constitutional); *Walton v. Arizona*, 497 U.S. 639, 650, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990) ("So long as a State's method of allocating the burdens of proof does not lessen the State's burden to prove every element of the offense charged, or in this case to prove the existence of aggravating circumstances, a defendant's constitutional rights are not violated by placing on him the burden of proving mitigating circumstances sufficiently substantial to call for leniency."), *overruled on other grounds by Ring*, 536 U.S. at 589. Accordingly, the Illinois Supreme Court's decision did not unreasonably apply clearly established federal law.

*Certificate of Appealability*

When a court dismisses a habeas petition, it must issue or deny a certificate of appealability. In order for a certificate of appealability to issue, the applicant must have made a substantial showing of the denial of a constitutional right, such that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate

18

to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). When a habeas petition is dismissed on procedural grounds, the petitioner must additionally show that a reasonable jurist would find it debatable whether the district court was correct in its procedural ruling. *Id.*

For the reasons stated in this order, this Court finds that Bannister has not made a substantial showing of the denial of his constitutional rights as he has not demonstrated that a reasonable trier of fact could debate either this court's procedural rulings or that his petition makes a substantial showing of the denial of a constitutional right. Accordingly, this Court declines to issue a certificate of appealability.

**Conclusion**

For the reasons stated herein, Bannister's petition for a writ of habeas corpus is denied and a certificate of appealability does not enter.

IT IS SO ORDERED.

Date: June 5, 2017

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge